Sebastian de Grazia and Anna Maria de Grazia v. Commissioner.
De Grazia v. Commissioner
Docket No. 89972.
United States Tax Court
T.C. Memo 1962-296; 1962 Tax Ct. Memo LEXIS 13; 21 T.C.M. (CCH) 1572; T.C.M. (RIA) 62296; December 18, 1962
Burton A. Friedman, Esq., 117 W. 197th St., New York, N. Y., for the petitioners. Chapman H. Belew, Jr., Esq., for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: The respondent has determined a deficiency in the income tax of the petitioners for the calendar year 1957 in the amount of $1,295. Certain adjustments have been agreed to and the sole *14 remaining issues are whether petitioner was in the "trade or business" of being an artist during the taxable year, and if so, the amount of expenses attributable to said "trade or business." [1]
Findings of Fact Some of the facts have been stipulated and are so found. Petitioners are husband and wife who resided in Princeton, New Jersey, at all times material hereto. They are American citizens and they filed a joint, cash-basis income tax return for the year in issue with the district director of internal revenue at Newark, New Jersey. During 1957, petitioner Sebastian de Grazia (hereinafter sometimes referred to as Sebastian) was a visiting professor of political science at Princeton University. He was also Director of Research for the 20th Century Fund. On the face of the de Grazia 1957 return, Sebastian's occupation was listed as "Research Director, Professor, Consultant, Writer, Musician." He reported salary from Princeton University and the 20th Century Fund, disclosed a social security number, and claimed credits for taxes withheld and social security taxes *15 overpaid. He also reported, on a Schedule C attached to the return, income from his business as a consultant and writer. He described the source of such income as "Consultation, Lectures, Reports, Books, Articles." He claimed appropriate deductions with respect to his business as a consultant and writer, including unreimbursed travel, meals, and lodging away from home of $1,808, and these have been allowed in full by the respondent. The income and deductions relating solely to Sebastian are not in issue. The occupation of petitioner Anna Maria de Grazia (hereinafter sometimes referred to as Anna Maria) was listed as "Artist" on the face of the 1957 return. She reported no income from salary or wages, disclosed that she had no social security number, and paid no self-employment tax. On a separate Schedule C attached to the return she listed her principal business activity as "Artist," her principal product or service as "Oil Paintings," her business name as "Anna Maria d'Annunzio," and her business address as "12 Chestnut Street, Princeton, New Jersey." Anna Maria was born in Switzerland, spent most of her life in Italy, came to America in 1952, and married Sebastian in 1952. She *16 became a naturalized citizen in 1955. Anna Maria began her serious interest in painting in 1940. She served as a guide for allied troops during World War II and sold one painting during this period. Much of her early work was destroyed during the war. She originally painted with her right hand, but in 1944 she had a condition of polio, so she started over, working with her left hand, and now paints with her left hand. Anna Maria is a granddaughter of Gabrielle d'Annunzio who was a famous Italian poet, novelist, playwright and military hero. In 1942 her paintings won first prize in an exhibition by young painters of Florence and in that same year her paintings won third prize in a contest which was open to all Italians. She was member of the Italian painters union until she was forced to resign because of her becoming an American citizen. This was a union of professional artists and entry was conditioned on the attestation of three professional artists that the applicant is a professional, which attestation she received. By 1957 she had studied under such artists as Annigoni who has painted Queen Elizabeth and the Royal Family, Felice Carena, former President of the Academy *17 of Florence, and Oskar Kokoschka, co-winner of the $15,000 1960 Erasmus Prize, of the Academy of Salzburg. She did no painting during the years 1943 to 1947, painted and exhibited from 1948 through 1951, neither painted nor exhibited from 1952 to 1955, and resumed painting in 1956, although she did not exhibit again until 1958. By 1957, Anna Maria had achieved recognition in her own right among Italians as an artist. In addition to the aforementioned contest victories and study under renowned artists, her biographical sketch and a copy of her self-portrait appeared in the book "Un Secolo di Pittura" (A Century of Painting, 1850-1950). Subsequent to 1957, she exhibited at one-man shows in Milan, Rome, Florence, and Pescara and was the subject of numerous newspaper articles. She exhibited at the Schneider Gallery in Rome which was run by an American and which was considered to have high prestige. As the result of showing a portrait painted in 1957, Anna Maria received a commission to do a portrait for which she received $500 in a subsequent year. Anna Maria had a showing in Princeton in 1962 and a private showing to take place in New York was planned for 1962. In 1962 Anna Maria's *18 paintings were also on exhibit at the 100 Gallery in Princeton, the Little Gallery in Princeton, and at the Schneider Gallery in Rome. Her paintings carry price tags when on exhibition. At the beginning of 1957, the year in issue, Anna Maria was in Italy with her son, Marco, a minor. She and her son returned by air to this country on or about January 21, 1957. She spent the next few weeks in New York where she painted scenes from atop the Empire State Building. She then painted in Princeton, New Jersey. Petitioners resided in a rented house in Princeton which Anna Maria believed to be inadequate for painting. During this time, Anna Maria searched for a room or studio where she could work better. She was given a room in which to work at the University in Princeton, but found it unsatisfactory because of the small amount of light admitted through the room's small windows. Petitioners eventually bought a house in Princeton which had an out-building suitable to serve as Anna Maria's studio. Anna Maria made several trips to New York during 1957 in an attempt to attach herself to an art gallery, but she was unsuccessful. She was informed and believed that it would take several years *19 to have a show in New York because of the great desire by artists to show there. She did place one painting of hers in a collective showing at a New York City art gallery. It was sold in a year subsequent to the year in issue. On May 9, 1957, Anna Maria, her son Marco, and their maid Imola Moretti, sailed for Europe aboard the ship Constitution. Sebastian traveled to Italy the following month. Anna Maria established herself in the Piazza Donatello Studios in Florence, Italy, which were built many years ago, have large windows and good light, and were reserved for artists. One factor in Anna Maria's decision to reside in Florence was that she had lived there before. She believed it would be easy for her to find a studio in Florence and there was a frame maker and art dealer there whom she had known for approximately 20 years. This made purchasing supplies and materials easier. The prices for art supplies were less expensive in Florence than in the United States. She had many friends of long standing in Florence. Her mother lived in Florence. While Florence was a convenient and inexpensive place to work, the market for art was rather poor there. Anna Maria spent approximately 4 *20 hours per day actually painting during 1957. She also transacted business with art dealers and the frame maker in the evening. She also stretched her own canvases which required approximately 1 hour per canvas. This was difficult for her since she lacked complete use of her right hand as an aftermath of her polio. When in Italy, she also made the preparation which is spread on the canvas prior to painting. This preparation was sold ready-made in the United States but not in Italy. These latter chores were done at night. From July 17, 1957, to August 7, 1957, Anna Maria attended the International Summer Academy of Fine Arts at Salzburg, Austria. During the summer of 1957, she also took an 11-day trip to Procchio, which is a little village on the Island of Elba. She selected that location because it was a good place for her child to vacation, and because it provided many subjects for her to paint. In September, Anna Maria spent some time in Venice during an international film and art festival. Anna Maria, her child Marco, and a maid, returned to this country on or about December 5, 1957, aboard the S.S. Augustus. Sebastian had returned to the United States 2 months earlier. Anna *21 Maria made some efforts to sell her paintings in 1957. She did not employ agents to sell them, but she tried to sell through art galleries. Her pricing techniques were based on information from galleries. Anna Maria devoted more time to the production of paintings in 1957 than to the selling of them. She had been informed that a prestige art gallery would require numerous paintings for a showing and she spent 1957 in the attempt to build up her inventory. She completed 12 or 15 paintings in 1957 and had, at the end of the year, about 10 not yet finished. Anna Maria and Sebastian believed that her art activities would yield an eventual profit, therefore Sebastian financed them, and Anna Maria had no other significant occupation during 1957. Petitioners did not own a car and they did not live extravagantly. Anna Maria carried no insurance on her paintings in 1957 nor had she in any prior year. She did, however, take out insurance in the amount of $10,000, subsequently reduced to $4,400, covering 20 of her paintings on or about January 29, 1959. This was after one of respondent's agents had issued a report to petitioners on or about December 22, 1958, proposing disallowances of respectively *22 $648, $1,503, and $1,511 to Anna Maria for labor, unreimbursed travel and meals and lodging away from home, and also proposing disallowances of a portion of Sebastian's business expenses. Anna Maria's receipts, expenses and net losses for the calendar years 1957-1960, inclusive, as reported on her income tax returns, were as follows: Year
Receipts
Expenses
Net Loss
1957
$5,769.00
$5,769.00
1958
$500.00
6,854.02
6,354.02
1959
575.00
5,360.98
4,785.98
1960
710.00
4,968.35
4,258.35 In 1961 she had receipts of approximately $1,270. The petitioners used the cash-basis method of accounting. In 1957 Anna Maria did not keep formal business books, but did maintain some records and memoranda relating to her activities as a painter. A separate Schedule C attached to the 1957 return showed the following: Total Receipts
$ 0.00
Less: Cost of labor
$ 648.00
Material and supplies
866.00
Other costs
Studio furnishings
$ 94.00
Shipments of paintings and materials
52.00
Postage
24.00
Phone
67.00
Unreimbursed conferences and promotion
236.00
Unreimbursed travel away from home neces-
sary to professional work
1,503.00
Unreimbursed meals and lodgings in travel
status away from home
1,511.00
3,487.00
Rent on business property
768.00
$5,769.00
$5,769.00
*23 The parties have stipulated that 65 percent of all but one of the above-claimed items of expense should be allowed if we find that Anna Maria was engaged in a trade or business in 1957 or if we find that her art activities constituted a transaction entered into for profit. The $1,503 item designated "Unreimbursed travel away from home necessary to professional work" is not within the stipulation. The parties have stipulated that this last figure was arrived at by means of the following computation which totals $1,502.70: Passport renewed
$ 5.00
Photos plus $1.40 taxi
3.40
May 1
Princeton-N. Y.-Princeton ($2.05 plus $3.20 taxis, for passport)
5.25
Jan. 20, 21
Rome-N. Y.-Princeton
Anna Maria
$230.00
Marco (Son)
$180
Less 1/2 unclaimed
90
90.00
Taxis, Florence and Rome
18.00
Taxis, porter, etc. - N. Y.
10.00
2.05
Taxi, Princeton
1.50
$351.55
352.00
Mar. 15-17
Princeton-N. Y.-Princeton
6.80
Apr. 8
Princeton-N. Y.-Princeton
6.80
Apr. 10-11
Princeton-N. Y.-Princeton
6.80
May 1
Princeton-N. Y.-Princeton
4.75
May 3
Princeton-N. Y.-Princeton
6.80
May 9
Princeton-N. Y.-Genoa-Florence
Anna Maria
$260.00
Marco (Son) $130
Less 1/2 unclaimed
65
65.00
Taxis, porters, etc. in N. Y.
10.00
2.05
Taxis
5.00
Railroad
8.00
Taxis, etc.
5.00
Meals
5.00
Taxis, Florence, etc.
5.00
$365.00
Boat charges
62.50
Doctor
5.90
$433.40
$ 439.40
June 10-12
Florence-Rome-Florence
Railroad
$18.00
Taxis, etc.
2.00
$ 20.00
July 17
Florence-Venice-Salzburg-Venice-Florence
Railroad
$20.00
Porters, taxis, calls, etc.
15.00
$ 35.00
July 17-
Aug. 7
Saw Kokoschka
Aug. 7
Salzburg-Venice-Florence
35.00
Aug. 19-30
Folerence-Procchio-Florence
Paint landscapes
20.00
Sept. 2-13
Florence-Venice-Florence
Paint, see biennial art show and art people
20.00
30 trips environs of Florence at $1.50, taxis, buses, etc. -
landscaping
45.00
Dec. 5
Florence-Genoa-N. Y.-Princeton
Anna Maria
$290.00
Marco (Son)
$145.00
Less 1/2 unclaimed
72.50
72.50
Taxi
10.00
Genoa railroad - Anna Maria
8.00
Marco (Son)
$8.00
Less 1/2 unclaimed
4.00
4.00
Taxis, etc.
5.00
Taxis, porters in N. Y.
10.00
Railroad, N. Y.-Princeton
3.00
Taxis, Princeton Junction
2.10
$404.60
62.50
$467.10
477.10
Dec. 10-13
Princeton-N. Y.-Princeton
6.80
Dec. 16-17
Princeton-N. Y.-Princeton
6.80
Total
$1,502.70
Amount Deducted
$1,503.00
*24 Petitioner Anna Maria de Grazia's painting activities in 1957 constituted a trade or business. In 1957 Anna Maria incurred expenses in her trade or business amounting to $3,525. Opinion Respondent contends that Anna Maria's art activities were undertaken for social pleasure or recreation and constituted a mere hobby in contradistinction to a trade or business within the purview of section 162(a). [2] He notes that Anna Maria did not have any receipts from painting in the year in issue and that she had net losses for 4 consecutive years. The determination of whether the activities of a taxpayer constitute a trade or business requires an examination of the entire factual context. . While "trade or business" has been defined as "'[that] which occupies the time, attention and labor of men for the purpose of a livelihood or profit,'" , it is accepted *25 that each case must be decided on its own facts. . Although it is not necessarily determinative, the intent of the taxpayer is very important in deciding whether certain activities constitute a "trade or business." In , the Board said: The real test is whether the operation was carried on as a business for gain or whether it was carried on for recreation or pleasure. And this question is largely a matter of the intent of the petitioner. * * * After seeing the witnesses testify and listening to their testimony, and after considering all the facts and circumstances of the instant case, we are satisfied that Anna Maria was in the trade or business of being an artist. We are convinced that her intent in pursuing the art activities was to seek profit rather than to indulge in mere recreation. The reasonableness of her belief is not necessarily determinative. The proper test is rather whether she entered into and carried on her art activities in good faith with the intent to make a profit or with the belief that a profit could be realized. *26 (C.A. 2): Anna Maria and Sebastian testified that her intent in painting was to derive a profit, and her conduct corroborates this testimony. Anna Maria began painting as a youth and she won prizes for her work. After her right hand had been partially crippled by polio, she arduously struggled and eventually succeeded in gaining artistic proficiency with her other hand. She studied under several eminent artists. She had been a member of the Italian painters union until forced to resign because of her being naturalized as an American citizen. This union was restricted to professional artists and entry was conditioned on the recommendations of professional artists. By 1957 Anna Maria had an established reputation as an artist in her native Italy. Her biographical sketch and a copy of her self-portrait appeared in a book entitled "A Century of Painting, 1850-1950." She exhibited her paintings prior to 1957, and subsequent to that year she exhibited at several shows devoted exclusively to her work. Anna Maria has been the subject of numerous newspaper articles. While Anna Maria had no receipts from sales in 1957, she has had sales receipts in subsequent *27 years. The receipts from the sale of her paintings have increased in every subsequent year through 1961. During 1957 she painted approximately 4 hours during the daytime. She also transacted art business in the evenings. She undertook the arduous task of stretching her own canvases and often attempted to sell her paintings. She worked continually to build up an inventory so that she could exhibit and sell her paintings. She had no other income-producing occupations, and no other significant amounts of income. Sebastian felt a financial strain in investing in her art activities, but hoped they would eventually be profitable. We are satisfied that a mere dilettante would not have applied herself so instinctively. We believe the testimony to the effect that her intent was to derive profit from her art activities. The respondent argues that her losses evidence the fact she was not in a trade or business, yet there are numerous cases where far greater losses over much longer periods did not prevent a finding of the existence of a trade or business. Indeed, Anna Maria's lack of receipts in 1957 was due in large measure to her desire to sell profitably. *28 She hoped to sell her paintings through successful exhibitions. Successful exhibitions require a large inventory of good paintings. Therefore she devoted much of 1957 to the production of an increased inventory of good paintings. She has had exhibitions in subsequent years and her sales receipts have risen in each of them through 1961. The entire history of her painting activities since 1940 rebut any contention that she was merely preparing to enter the painting trade or business. It is well recognized that profits may not be immediately forthcoming in the creative art field. Examples are legion of the increase in value of a painter's works after he receives public acclaim. Many artists have to struggle in their early years. This does not mean that serious artists do not intend to profit from their activities. It only means that their lot is a difficult one. Viewing the record as a whole, we find that Anna Maria incurred expenses in her trade or business of painting amounting to $3,525.00 which are deductible under section 162(a). Since we so find, we need not reach petitioners' alternative contentions regarding sections 165 and 212. Decision will be entered under Rule 50. Footnotes
1. The relevant I.R.C. sections are: 62, 162, 165 and 212. All statutory references are to the I.R.C. of 1954.↩
2. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *↩